Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3244 | **DATE** | 7/31/2001 |
| **CASE TITLE** | Yancy vs. Massanari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] That for the foregoing reasons, the court denies the Commissioner's motion for summary judgment. The Court grants in part plaintiff's motion for summary judgment, only to the extent it asks that this action be remanded, and remands this matter to the Commissioner pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | | AUG date docketed 2001 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 AUG -2 PM 12: 20 | |
| TP | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number 24

DOROTHY JEAN YANCY, )
)
    Plaintiff, )
)
) No. 00 C 3244     AUG 3 2001
v. )
)
LARRY G. MASSANARI, ) Judge John A. Nordberg
Acting Commissioner of Social Security,[1] )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Dorothy Jean Yancy filed this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security denying her claim for supplemental social security income. Before the court are cross-motions for summary judgment. For the reasons set forth below, this matter is remanded to the ALJ for further consideration.

## BACKGROUND

In 1996, as part of the Contract With America Advancement Act, Congress mandated that neither drug addiction nor alcoholism could be a contributing factor material to the finding of a disability. *See* 42 U.S.C. § 423(d)(2)(C). As a result of this change in the law, the Social Security Administration sent termination notices to individuals who were receiving disability

---

[1] Larry G. Massanari is substituted as defendant in place of former Commissioner Kenneth S. Apfel. *See* Fed. R. Civ. P. 25(d)(1).

-1-

benefits based on either of these conditions. Such individuals were told that their benefits would be terminated unless they could prove they were disabled based on other factors. Plaintiff received one of these notices. In February of 1997, she filed a protective application for supplemental security income, alleging that she was disabled based on nerve damage to her left hand, depression, and various other conditions.[2]

After her application was denied, plaintiff was given a hearing before an administrative law judge on May 27, 1998. She was 52 years old at the time of the hearing. The ALJ denied her application in a written opinion dated August 26, 1998. The Appeals Council then denied plaintiff's request for review, and she timely filed her complaint in this court.

In finding plaintiff not disabled, the ALJ first concluded that plaintiff's impairments collectively were "severe" within the meaning of the applicable regulations. (Op. at 3.) He described these impairments as follows:

> The medical evidence establishes that the claimant has shortness of breath related to tobacco cigarette smoking with prescriptions for Albuterol and Vancenase, a history of arthritis in the arms and low back, polysubstance dependence, hypertension, ulnar palsy of the left hand secondary to compartmental syndrome following a traumatic injury in 1989, active hepatitis C infection, and a dsythymic mood disorder secondary to her alcohol and drug dependence . . . .

(Op. at 5.) He then noted that these impairments were not listed in, or equal to, the ones listed in Appendix 1, Subpart P, Regulations No. 4. (*Id.*)

The ALJ therefore assessed plaintiff's residual functional capacity ("RFC"), concluding that she had the capacity to perform "the physical exertion requirements of light-level work not

---

[2]According to the Commissioner, plaintiff was originally granted disability benefits on January 16, 1992 based on her low I.Q. score, which was exacerbated by her alcoholism, and based on her depression.

requiring excellent grasping, reaching, fingering or similar manual dexterous activity, or lifting/carrying more than 10-15 lbs. frequently or 20 lbs. occasionally, and no performance of work activity in environments with particulate respiratory irritants." (*Id.*) He stated that her "non-exertional limitations" did not "significantly compromise" her ability to perform such work. (*Id.*)

Because plaintiff had no past relevant work history (she had not worked since 1979), the ALJ then moved to step five of the analysis. The Commissioner had the burden of showing that there existed other jobs in significant numbers that plaintiff could perform in light of her impairments, age, education, and work history. (Op. at 4.) The ALJ concluded that plaintiff's capacity to perform light-level exertional work made her qualified for approximately 1600 separate light and sedentary unskilled occupations in eight broad occupational categories. (*Id.*) The ALJ noted that the vocational expert who testified at the hearing pointed to three separate occupations in the regional economy that plaintiff could perform based on the impairments identified by the ALJ. Given her ability to perform these jobs, the ALJ concluded that plaintiff was not disabled.

## DISCUSSION

Plaintiff argues that the ALJ's decision is flawed because he failed to consider important parts of her case, including her mental impairments and her Hepatitis C, and that the ALJ improperly discounted her subjective testimony without making any specific findings regarding her credibility. As set forth below, we agree with most of the criticisms raised by plaintiff and therefore will remand this case back to the ALJ for further analysis and explanation.

In reviewing the ALJ's decision, we ask whether it was supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). We may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Id.* Despite this deference, we must also be ensured that the ALJ considered all lines of evidence, that he minimally discussed evidence that contradicts the Commissioner's position, and, most importantly, that he built "an accurate and logical bridge from the evidence to his conclusion." *Id.* at 872; *Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2001).

We now turn to the specific criticisms made by plaintiff. These criticisms fall into four categories.

## I. Limitations To Plaintiff's Left Arm And Hand.

In 1989, plaintiff injured her left hand in an altercation. It is undisputed that, as a result of this injury, plaintiff suffers from ulnar palsy of the left hand. Dr. Bridgeforth, a neurologist who examined plaintiff in 1997, confirmed that she suffered from this condition. In his opinion, the ALJ found that plaintiff suffers from "ulnar palsy of the left hand secondary to compartmental syndrome following a traumatic injury in 1989." (Op. at 5.) The ALJ also concluded that this condition imposed certain limitations on plaintiff's ability to use her left hand. Specifically, in his RFC assessment, the ALJ concluded that plaintiff could only do light-level exertional work that did not require "excellent bi-manual grasping" and did not require "lifting/carrying more than 10-15 lbs. frequently or 20 lbs. occasionally." (Op. at 3.)

Plaintiff argues that the ALJ improperly discounted the limitations to her hand and thus found that her hand was less impaired than the record supports. Plaintiff argues that the ALJ (i)

-4-

failed to consider all of the objective medical evidence and (ii) improperly discounted her subjective testimony of pain.

As to the former point, we find no error in the ALJ's opinion. Plaintiff's main criticism is that the ALJ relied on Dr. Bridgeforth's report, but then overlooked Dr. Bridgeforth's statement that plaintiff had decreased pin prick sensation over the ulnar portion of the left hand. It is not clear to us that the ALJ overlooked this fact or even how it would change the analysis. First, the ALJ acknowledged this fact in his opinion (at p. 2). Second, as noted above, the ALJ clearly found that plaintiff did have certain physical limitations in her left hand. Third, although Dr. Bridgeforth noted that plaintiff had reduced pin prick sensation, he also noted that plaintiff had the ability to pick up pens and coins.[3]

As to the issue of pain, however, we agree with plaintiff's assertion that the ALJ failed to fully explain why her testimony was not credible. To summarize, plaintiff testified at the hearing that she had constant pain in her left hand, that her hand cramped up, that she experienced numbness and tingling in her left hand and arm, that she could only carry 10 pounds with that hand, and that she took Ibuprofen, Motrin, and Elavil to treat the pain.

In his opinion, the ALJ did not discuss any of this specific testimony. Instead, he simply stated that plaintiff's subjective complaints of pain, despite being "somewhat consistent" with the objective medical evidence, were "out of proportion" to that same evidence. (Op. at 3.)

---

[3] Plaintiff also complains that the ALJ did not fully understand the meaning of Dr. Bridgeforth's finding that her grip strength in her left hand was only "three plus" out of five. We do not find this complaint to be material. Plaintiff does not explain in what sense the ALJ supposedly misunderstood the term. In any event, the ALJ did acknowledge that plaintiff had some limitations in the use of her left hand.

However, he failed to explain in what sense plaintiff's testimony was out of proportion to the evidence. The only attempt at an explanation is the conclusory assertion that Dr. Bridgeforth's report suggested that plaintiff's physical injury only imposed "mild functional limitations." (*Id.*) This statement is not helpful because Dr. Bridgeforth's report does not discuss the issue of pain.

It is true, as the Commissioner argues in his response brief, that the ALJ's credibility determination is entitled to substantial deference and will not be disturbed unless patently wrong. However, "[u]nder Social Security Ruling 96-7p, the ALJ's determination or decision regarding claimant credibility 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.'" *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). In this case, the ALJ did not follow this guidance with regard to plaintiff's testimony relating to pain or relating to other matters discussed below. Instead, he simply made a broad statement that he did not find her testimony credible. The fact that he found her testimony "somewhat consistent" with the evidence makes it hard to tell just what part of her testimony he found believable and what part he did not.

Therefore, on remand, the ALJ should specifically discuss why he does not believe plaintiff's testimony that she suffered constant pain in her left hand and arm. In *Zurawski*, the Seventh Circuit reiterated the following guidance for analyzing the question of pain based on subjective testimony:

> If the allegation of pain is not supported by the objective medical evidence in the file and the claimant indicates that pain is a significant factor of his or her alleged inability to work, then the ALJ must obtain detailed descriptions of claimant's

-6-

daily activities by directing specific inquiries about the pain and its effect to the
claimant. She must investigate all avenues presented that relate to pain, including
claimant's prior work record information and observations by treating physicians,
examining physicians, and third parties. Factors that must be considered include
the nature and intensity of claimant's pain, precipitation and aggravating factors,
dosage and effectiveness of any pain, functional restrictions, and the claimant's
daily activities.

*Id.* at 887 (*quoting Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994) (citations omitted)).[4]

## II.     Mental Impairments.

Plaintiff next complains that the ALJ failed to consider her claim of mental impairments. Without taking a position on the ultimate question as to whether these impairments were significant, we agree with plaintiff that the ALJ should have explicitly considered this aspect of her claim.

Plaintiff complained that she suffered from psychological problems -- variously described as a dsythymic mood disorder, depression, stress, and anxiety -- and that she had a low I.Q. Her mental condition was evaluated by three consulting mental health professionals (Drs. Mason, Karr, and Danet). Plaintiff believes that the observations by these three doctors provide evidence to support her claim of mental impairment.

Dr. Mason, a psychiatrist and neurologist, noted that plaintiff stated that she had been depressed "for a long time" and that she "seemed tense and chewed constantly" and diagnosed her with polysubstance dependence. (R. 386-89.). Dr. Danet, a psychiatrist, noted that plaintiff stated that she felt "very depressed" at times and often cries for no reason. (R. 418.) Dr. Danet

---

[4]There were various statements in the record concerning plaintiff's daily activities. The Commissioner in his response brief (at p. 3) summarizes this evidence. In addition, plaintiff testified that she was taking various medication to combat the pain in her hand.

concluded that plaintiff "probably would have difficulty in handling the stress of every day activity" and diagnosed her with (i) polysubstance dependence, in remission; (ii) mood disorder, dysthymia, secondary to intense alcohol and drug dependence; and (iii) borderline intellectual functioning. (R. 421.) Dr. Karr, a psychologist, noted that plaintiff reported "ongoing depressive symptoms" and diagnosed her with (i) polysubstance dependence, in remission; (ii) low average I.Q.; and (iii) asthma, high blood pressure. (R. 422-23.) All three of these doctors examined plaintiff in 1997.

In his opinion, the ALJ accepted as part of his findings that plaintiff suffered from a "dysthymic mood disorder secondary to her alcohol and drug dependence" but concluded that this mood disorder had no effect on plaintiff's ability to work. (Op. at 5.) However, the ALJ never explained how he came to this conclusion. Although the ALJ did provide a narrative summary of the three reports (Op. at 2-3), he never indicated in this summary how he weighed the evidence in the various reports. The ALJ never acknowledged the fact that plaintiff also was being treated by a psychologist (Dr. Pittman) for generalized anxiety disorder and a dysthymic disorder.[5] Nor did he analyze the issue of plaintiff's low I.Q. Upon remand, the ALJ must provide some discussion and explanation regarding this entire line of evidence.

Along this line, we note that the ALJ did describe the mood disorder as being "secondary to" plaintiff's drug and alcohol dependence. It is not entirely clear what is meant by this phrase. The Commissioner suggests that ALJ must have concluded that plaintiff's mood disorder was only present when she was actively using drugs and alcohol and that, because she stopped using

---

[5]The Commissioner states that the ALJ was not required to accept a medical source opinion. This does not mean, however, that the ALJ may simply ignore that opinion altogether.

those substances in 1995, she no longer had a mood disorder as of 1997. Because the ALJ failed to provide an explicit discussion of this issue, we cannot say for sure whether the ALJ was relying on this rationale. However, to the extent that he was doing so, he should provide an explanation and should specifically address plaintiff's claim that her mood disorder continued even though she quit using alcohol and drugs. As noted above, plaintiff points to various symptoms that existed in 1997. She also relies on the fact that she was actively being treated for anxiety and a mood disorder as late as 1998.[6]

### III. Fatigue and Hepatitis C.

Plaintiff next argues that the ALJ failed to consider her Hepatitis C and her claim that it she suffered from fatigue due to this condition. Again, we agree with plaintiff.

To begin with, there is no dispute that plaintiff suffered from active Hepatitis C and that fatigue (of some degree) is a common symptom associated with this condition. Plaintiff testified at the hearing that she suffered from fatigue: "sometimes [when] I'm on the go from about six to eight hours . . . then I have to take the next of couple of days, three days to rest up." (R. 52.) The Commissioner argues that the ALJ had the right to simply disregard plaintiff's testimony that she was fatigued and also suggests that the ALJ disregarded the claim of fatigue because plaintiff failed to provide medical evidence to support her contention.

---

[6]Alternatively, it is possible to interpret the phrase "secondary to" in terms of causation, meaning that plaintiff's current mood disorder was "caused" by her earlier abuse of drug and alcohol use. If this is what is meant by "secondary to," we do not see how the earlier substance abuse is relevant to the question of whether plaintiff currently suffers from a mood disorder. *See generally Pettit v. Apfel*, 218 F.3d 901, 904 (8th Cir. 2000) (noting that under the provision in the Contract With America Advancement Act, "even if long-term alcohol abuse causes a disability, alcoholism will not be found 'material' to the finding of disability if the disability remains after the claimant stops drinking.").

-9-

As an initial point, the ALJ simply did not analyze this issue so we cannot know for sure why he disregarded it. As we have already noted above, it is not permissible for the ALJ to simply make a broad declaration that plaintiff's testimony was not credible. Moreover, we are not sure what objective medical evidence the Commissioner believes plaintiff should have presented. Although the Commissioner states that none of plaintiff's doctors stated that her fatigue was disabling, the question of fatigue did not come up in their reports. In sum, the ALJ should address this issue upon remand.

### IV. The Vocational Expert.

In her final criticism, plaintiff raises two points relating to the testimony of the vocational expert ("VE"). To summarize the relevant facts, the ALJ posed a hypothetical to the VE, asking him about a person who could perform light work but who had some limitations to her left hand. The VE testified that such an individual would be qualified to perform the jobs of office cleaner, hand packager, and inspector.

First, plaintiff argues that the hypothetical question posed by the ALJ did not adequately reflect the work-limitations set forth in the record. For example, she states that the hypothetical failed to accurately describe the limitations to her hand and failed to include other limitations such as her inability to handle stress. With regard to the limitations to her hand, as discussed in Section I above, the only basis for error we see is the ALJ's failure to address plaintiff's claim of subjective pain. As for the other conditions, such as fatigue and mental impairments, we must wait for the ALJ's complete explanation before we can say whether or not he should have included them in the hypothetical.

Second, plaintiff argues that, even assuming the hypothetical was accurate, the VE's

testimony was flawed because the VE defined two of these three jobs as "light" when the Dictionary of Occupational Titles defines them as "medium/heavy" jobs. In his response brief, the Commissioner failed to address this point. Upon remand, the ALJ should resolve this apparent contradiction.

## CONCLUSION

For the foregoing reasons, the court denies the Commissioner's motion for summary judgment. The court grants in part plaintiff's motion for summary judgment, only to the extent it asks that this action be remanded, and remands this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**ENTER:**

JOHN A. NORDBERG
Senior United States District Court Judge

DATED: July 31, 2001